**AFSCME LOCALS 1102 AND 320, Respondents Below, Appellants**

v.

**CITY OF WILMINGTON, Petitioner Below, Appellees.**

**Civ. A. No. 026-N.**

Court of Chancery of Delaware, New Castle County.

Submitted: March 19, 2004.
Decided: July 9, 2004.

Perry L. Goldlust of Aber Goldlust Baker & Over, Wilmington, for Respondents Below, Appellants.

Martin C. Meltzer of City of Wilmington Law Dept., Wilmington, for Petitioner Below, Appellees.

Jeffrey M. Weiner of Law Office of Jeffrey M. Weiner, Wilmington, for FOP Lodge # 1.

PARSONS, Vice Chancellor.

The City of Wilmington (the "City") and the Fraternal Order of Police Lodge ("FOP") move to dismiss the appeal of AFSCME Locals 1102 and 320 ("AFSCME" or the "Locals") under Court of Chancery Rules 12(b)(4) and (5) for improper service and 12(b)(1) for lack of subject matter jurisdiction. This is the Court's decision on that motion. For the reasons stated below, the Court concludes that the action must be dismissed for lack of subject matter jurisdiction.

## I. Facts

Locals 320 and 1102 are part of the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME"). In 1993, the City of Wilmington executed a parity provision in its collective bargaining agreement ("CBA") with AFSCME Local 320.[1] Under the provision, Local 320 would receive the same wage and benefit increases granted by the City to any other unions through the collective bargaining process. This was the first time the City had agreed to grant parity in a CBA.[2] The City subsequently entered into similar agreements with AFSCME Local 1102, Local 1590 (the Wilmington Firefighters' Association), and for a brief period, FOP Lodge 1.[3]

In May 2000, the City negotiated a new CBA with the FOP that provided for additional pay increases beyond those being granted to other unions. The City believed those increases were based on factors "unique to certain positions in the police department" and therefore would not trigger the parity provisions in other CBAs.[4] Local 1590, however, claimed that its parity agreement had been triggered. When the City refused to negotiate, it filed an unfair labor practice action ("ULP") before the Public Employment Relations Board ("PERB"). The PERB's executive director held that the increase did not trigger the parity provision because it was not an "across-the-board salary increase," and Local 1590 appealed to this Court.

In a March 12, 2002 opinion, Vice Chancellor Strine reversed the PERB's decision and held that the wage increase was "precisely" the sort of thing the parity provi-

---

1. PERB Hearing Transcript (hereinafter "PERB Tr.") at 30. A copy of the CBA was filed as Ex. 6 to Ltr. from Charles Long to Register in Chancery (Oct. 30, 2003) (hereinafter "Long Ltr.").

2. PERB Tr. at 30. As noted by the PERB Executive Director, parity provisions are considered useful in collective bargaining because they eliminate the incentive for individ-

ual unions to hold out, by assuring the unions that they all will receive the same salary increases. PERB Executive Director's Decision (hereinafter "PERB E.D. Decision") at 12.

3. The parity agreement with FOP was taken out in later negotiations. *Id.*

4. *Id.* at 31.

sion was designed to cover, and that the PERB's interpretation of the provision rendered it "toothless."[5] As a result, the City reentered negotiations with Locals 1590, 302, and 1102 to resolve their parity claims. Ultimately, the City paid out over $5 million to its employees based on those claims.[6]

Around the same time, the City attempted to negotiate new CBAs with Locals 320 and 1102, and with the FOP. The Locals sought to maintain the parity provisions, but the City was reluctant to renew them. In addition, the FOP claimed that granting parity provisions to the Locals would hinder its ability to negotiate with the City. On August 14, 2002, the FOP advised the City that, if it granted parity provisions in the new CBAs with the Locals (or any other union), the FOP would file an unfair labor practice action.[7]

On October 18, 2002, the City filed a petition for a declaratory statement[8] from the PERB pursuant to Title 19, sections 1306 and 1606 of the Delaware Code.[9] The City claimed there was a controversy over whether it would violate its duty to bargain in good faith by recognizing or granting parity provisions with the Locals or, alter-

natively, by refusing to negotiate or continue those parity provisions.[10] The City further stated that its statutory obligations to negotiate in good faith were being adversely impacted by this controversy. The Locals answered by denying that a controversy existed, as the City had not yet denied them parity and the FOP had not yet filed an unfair labor practice action. The parties then met with the PERB Executive Director. At the meeting, counsel for AFSCME expressed concern over the ripeness of the issues for declaratory relief. The parties ultimately agreed to seek a declaratory statement from the PERB on the following four issues: (1) whether the case presented a controversy ripe for declaratory relief; (2) whether parity agreements were legal under Delaware public sector collective bargaining laws; (3) if so, whether they are permissive or mandatory subjects of bargaining; and (4) whether the parity provisions of the most recent collective bargaining agreements survived the expiration of those agreements.

The PERB Executive Director found that the issue was ripe, that parity provi-

---

5. *Wilmington Firefighters Ass'n v. City of Wilmington,* 2002 WL 418032, at *2, 2002 Del. Ch. Lexis 29, at *28 (Mar. 12, 2002).

6. PERB Tr. at 31.

7. Ltr. from Jeffrey M. Weiner (Aug. 14, 2002) (Ex. 1 to Long Ltr.).

8. Title 14, section 4006 of the Delaware Code establishes the PERB. Under § 4006(h)(4), the PERB can:

> provide by rule a procedure for the filing and prompt disposition of petitions for a declaratory statement as to the applicability of any provision of this chapter or any rule or order of the Board. Such procedures shall provide for, but not be limited to, an expeditious determination of questions relating to potential unfair labor practices

and to questions relating to whether a matter in dispute is within the scope of collective bargaining.

9. Title 19, sections 1306 and 1606 of the Delaware Code establish the authority of the PERB to administer the Public Employment Relations Act and the Police Officers' and Firefighters' Employment Relations Act, respectively: "The Board, established by § 4006 of Title 14, known as the 'Public Employment Relations Board,' shall be empowered to administer this chapter under the rules and regulations which it shall adopt and publish."

10. City's Pet. for Declaratory Statement (Ex. 1 to Long Ltr.). In November of 2002, the City also entered into mediation with the FOP and Local 320, but reached an impasse with respect to the parity issue. *See* PERB Tr. at 49-53.

sions were permissive subjects of bargaining, and that they were improper only to the extent they interfered with the negotiation rights of third parties.[11] He also concluded that the parity agreements in the prior CBAs had expired.[12] AFSCME appealed the decision to the PERB, which upheld it.

AFSCME then filed an appeal to this Court, alleging in part that the PERB had no jurisdiction to render its decision. The City and the FOP moved to dismiss, claiming improper service of the appeal, equitable and judicial estoppel, lack of subject matter jurisdiction, and that there is no right of appeal from a PERB declaratory statement.

## II. Analysis

### A. Challenges to Process and Service of Process

■ The City alleges that the Locals failed to include opposing counsel or parties in the electronic filing of their notice of appeal and therefore the appeal should be dismissed pursuant to Chancery Court Rules 12(b)(4) and (5) for insufficiency of process and service of process. The filing and service record indicates that a Deputy Sheriff served the City with a copy of the Notice of Appeal on November 21, 2003, twenty-five days after it was filed with the Register in Chancery. The City fails to allege how this service was insufficient. Moreover, the Court is mindful that its electronic filing system had just been implemented when this appeal was filed, and that there were some problems in that initial period. For these reasons, the Court concludes that the motion to dismiss for

insufficiency of process and service of process is without merit and should be denied.

### B. Subject Matter Jurisdiction

■ The City further contends that there is no statutory right of appeal to this Court from the PERB decision and that the appeal should be dismissed for lack of subject matter jurisdiction. The Court of Chancery will grant a motion to dismiss under Rule 12(b)(1) if it appears from the record that the Court does not have jurisdiction over the claim.[13]

■ There is no right of appeal from a decision of an administrative body unless specifically granted by statute.[14] Title 19, sections 1308 and 1608 of the Delaware Code establish the PERB's authority to hear and resolve ULP actions:

The Board is empowered and directed to prevent any unfair labor practice ... and to issue appropriate remedial orders. Whenever it is charged that anyone has engaged or is engaging in any unfair labor practice ... the Board or any designated agent thereof shall have authority to issue and cause to be served upon such a party a complaint stating the specific unfair labor practice charge and including a notice of hearing containing the date and place of the hearing before the Board or any designated agent thereof.

Under 19 *Del. C.* § 1315, the PERB also has authority to administer binding interest arbitration:

(a) Within 7 working days of receipt of a petition or recommendation to initi-

**11.** PERB E.D. Decision (Ex. 15 to Long Ltr.).

**12.** *Id.*

**13.** *E. Shore Envtl., Inc. v. Kent County Dep't of Planning*, 2002 WL 244690, at *3, 2002 Del. Ch. Lexis 15, at *8 (Feb. 1, 2002).

**14.** 2 Am. Jur. 2d *Administrative Law*, § 557 (2004); *New Castle County v. Chrysler Corp.*, 681 A.2d 1077, 1080 (Del.Super.1995).

ate binding interest arbitration, the Board shall make a determination, with or without a formal hearing, as to whether a good faith effort has been made by both parties to resolve their labor dispute through negotiations and mediation and as to whether the initiation of binding interest arbitration would be appropriate and in the public interest;

\* \* \*

(d) The binding interest arbitrator shall make written findings of fact and a decision for the resolution of the dispute. . . .

Finally, 19 *Del. C.* §§ 1309 and 1609 establish a right of appeal to the Court of Chancery for parties adversely affected under the above sections:

Any party adversely affected by a decision of the Board under § 1308 or § 1315 [or § 608] may appeal that decision to the Chancery Court of this State.

Since the Locals are appealing a declaratory statement rather than an unfair labor practice action or binding interest arbitration, the City argues that this Court has no jurisdiction over the appeal and it should be dismissed.

The Locals claim that, although there is no specific statutory source for the appeal, the Court can nevertheless exercise equitable jurisdiction over it. In support of this proposition the Locals cite, at length, *Holland v. Zarif,*[15] in which this Court reviewed the Department of Labor's decision to refuse to accept a charge of sex discrimination, despite the lack of an explicit provision allowing judicial review. In *Holland,* absent review by the Court of Chancery,

no court or agency would have had jurisdiction to review the claim.[16] Furthermore, because the decision under review involved a refusal even to accept a claim, the claim had never been evaluated on its merits in any forum. Vice Chancellor Strine found this created due process problems, and held that "where the unavailability of such review would raise a serious constitutional question," the Court could exercise equitable review even absent an explicit statutory right of appeal.[17]

■ In terms of this case, potentially determinative issues therefore include whether the Locals have any other means of review for their disagreement with the PERB's declaratory statement, and the extent to which denying Chancery Court review, at this stage, will adversely impact the Locals. The Court recognizes that the questions addressed in the declaratory statement are important to all parties, and that the determination of those issues is likely to have a material effect on the collective bargaining process. Nothing in the relevant statutes, however, suggests that a declaratory statement under 19 *Del. C.* § 1306 and 14 *Del. C.* § 4006(h)(4), constitutes a "decision of the Board under § 308." Therefore, it is not subject to statutory appeal under 19 *Del. C.* § 1309.

■ If the PERB's declaratory statement is binding on both parties, then any further action before the PERB (*e.g.,* an unfair labor practice action or binding interest arbitration) might be barred by issue or claim preclusion. In that event, rejecting the Locals' appeal to this Court effectively would preclude any sort of review.[18] It seems illogical and unlikely that

---

15. 794 A.2d 1254, 1257 (Del.Ch.2002).

16. *Id.* at 1263.

17. *Id.*

18. Both parties acknowledge that a writ of certiorari to the Superior Court is available to the AFSCME Locals. A writ of certiorari, however, confines review to the paper record before the lower tribunal or administrative agency. *See* Victor B. Woolley, *Woolley on*

the Legislature intended a declaratory statement to be both binding and entirely unreviewable. Consequently, if the PERB's declaratory statement were binding in terms of issue or claim preclusion in a different proceeding, that would increase the likelihood that this Court would find review in the Chancery Court appropriate.

If, on the other hand, the declaratory statement primarily served an advisory function and was not binding on the parties, other means of review appear to be available to the Locals. For example, the Locals could file a ULP action or submit to binding interest arbitration. The decision at the PERB level, of course, might not be favorable to the Locals. Nevertheless, they would have an explicit right of appeal to this Court under 19 *Del. C.* §§ 1309 and 1609 from such an adverse decision. The Court of Chancery would then unquestionably have authority to evaluate the case on its merits.

▉▉▉ It is not entirely clear from the record and papers submitted by the parties whether or not the declaratory statement is binding.[19] Based on the language of the statement itself (as well as other similar PERB statements), it appears to serve more of an advisory function. In his statement, the PERB Executive Director noted that "[r]equests for declaratory statements require [PERB] to act in a prospective and advisory role" rather than "reviewing factually and retrospectively whether an action or course of conduct violated the statute."[20] As written, the challenged declaratory statement seems to provide broad guidance, as opposed to a specific determination of the parties' rights in this case. For example, one of the Executive Director's conclusions was that:

> Negotiated parity provisions are unenforceable and contrary to law to the extent that they trespass on the negotiation rights of a third party exclusive representative which is not a party to

parties in a specific case or controversy. Moreover, 10 *Del. C.* § 6507 expressly provides that declaratory judgments "may be reviewed as all other orders, judgments or decrees."

In contrast, the PERB's declaratory statement procedure is more open-ended and policy-oriented. Although one would expect the PERB to follow the guidelines set forth in a declaratory statement in a subsequent ULP or other proceeding, the record suggests that the parties to the later proceeding still might be able to present evidence or argument on those issues. The following excerpt from the PERB Executive Director's decision supports that view: "There can be no question but that this matter is mature and that a declaratory statement concerning the legality of parity clauses will facilitate the resumption of negotiations." PERB E.D. Decision at 11. The utility of the declaratory statement in the context of such negotiations does not rule out a possible ULP action or binding interest arbitration, if the parties reach an impasse.

*Delaware Practice*, §§ 894-897 (1906); *Holland v. Zarif*, 794 A.2d at 1269; *Reise v. Bd. of Bldg. Appeals of Newark*, 746 A.2d 271, 273 (Del.2000). Furthermore, as Vice Chancellor Strine noted in *Holland v. Zarif*, "it seems useful that all petitions for review by complainants for judicial review [under a specific administrative statute] be presented to one court, rather than balkanizing review duties." 794 A.2d at 1270. Thus, the writ of certiorari seems inadequate in this context.

19. The Court held a telephone conference with counsel on June 27, 2004 to explore these issues further. Although not conclusive, the arguments of counsel tended to support the view that the PERB declaratory statements are not binding.

The language of 14 *Del. C.* § 4006(h)(4) authorizing petitions for declaratory statements implies that the procedure is loosely analogous to declaratory judgment jurisdiction in the courts. *See* 10 *Del. C.* § 6501 *et seq.* A declaratory judgment entered by a court, however, has the force and effect of a final judgment or decree, adjudicating the rights of

20. PERB E.D. Decision at 18 (Ex. 15 to Long Ltr.).

the parity agreement. Whether the provisions of a particular parity agreement violate an employer's and/or an exclusive bargaining representative's statutory obligations will be determined on a case by case basis.[21]

Similarly, the PERB's declaratory statement in another matter, attached to Appellees' Appendix, contains general conclusions of law regarding what sort of conduct violates certain statutory provisions. It does not attempt to answer whether the specific conduct at issue was actionable.[22]

Viewing the declaratory statement as a nonbinding advisory opinion, the Court agrees with the City and the FOP that it does not have subject matter jurisdiction over the Locals' appeal at this stage. An appeal arises out of specific remedial orders, not broad statements of policy or guidance; the decision being appealed must show an intent to terminate the case.[23]

In the context of this labor relations dispute, the Locals can obtain a more fact-specific resolution of their case by filing a ULP or going into binding interest arbitration, both of which have explicit statutory rights of appeal to this Court.[24] This process will allow the Court to review the full record of the case and evaluate the substantive issues on their merits. It also is more consistent with the statutory framework applicable here. When the Legislature amended the Public Employment Relations Act (19 *Del. C.* §§ 1301–16), it stated that binding interest arbitration, unlike nonbinding fact-finding, was appealable to the Chancery Court "just as if it is any other *order* of the Public Employment Relations Board."[25] This reflects a Legislative intent that binding orders of the PERB, and not nonbinding advisory statements, carry a right of appeal to this Court.[26]

## III. Conclusion

For the reasons stated above, the City's motion to dismiss for lack of subject matter jurisdiction is granted. **IT IS SO ORDERED.**

**21.** *Id.*

**22.** Appellees' App., pp. 85-90.

**23.** 4 Am. Jur. 2d *Appellate Review* § 104 (2004).

**24.** The Court does not wish to elevate form over substance, or burden the parties, the PERB or the Courts with duplicative or wasteful proceedings. On the record presented, however, there is no reason to believe that it will be unduly burdensome or time-consuming for a party to proceed in the manner suggested in this letter opinion.

**25.** 72 *Del. Laws* 272 (emphasis added).

**26.** Because the Court of Chancery does not have subject matter jurisdiction of this appeal, the Court does not reach the additional questions of whether the PERB was without jurisdiction to issue the declaratory statement in the first place, or whether the Locals are estopped from bringing that claim.