# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARK A. GOMES, on behalf of )
himself and derivatively on behalf of )
PTT Capital, LLC, a Delaware limited )
liability company, )
            )
        Plaintiff, )
            )
    v. )  C.A. No. 11814-VCMR
            )
IAN KARNELL, JEREMI KARNELL )
and MONTEXT, LLC, )
            )
        Defendants, )
            )
    and )
            )
PTT CAPITAL, LLC, )
            )
        Nominal Defendant. )

## MEMORANDUM OPINION

Date Submitted:  August 11, 2016
Date Decided:  November 30, 2016

Peter B. Ladig, Brett M. McCartney, and Elizabeth A. Powers, MORRIS JAMES LLP, Wilmington, Delaware;  *Attorneys for Plaintiff Mark A. Gomes, derivatively on behalf of PTT Capital, LLC.*

Michael F. Bonkowski and Nicholas J. Brannick, COLE SCHOTZ P.C., Wilmington, Delaware;  Michael R. Pontrelli, FOLEY & LARDNER LLP, Boston Massachusetts;  *Attorneys for Defendants Ian Karnell, Jeremi Karnell, and Montext, LLC.*

**MONTGOMERY-REEVES, Vice Chancellor.**

This case involves three members of a Delaware limited liability company and their dispute over whether a valid agreement to arbitrate exists. The plaintiff, a member of the company, alleges breaches of fiduciary duty, breaches of contract, waste, and aiding and abetting breaches of fiduciary duty. The plaintiff also seeks judicial dissolution of the entity and the appointment of a liquidating trustee. The defendants, the other two members of the company, the entity accused of aiding and abetting the fiduciary duty breaches, and the company itself as a nominal defendant, move to dismiss the complaint for lack of subject matter jurisdiction because two separate agreements require arbitration.

This memorandum opinion holds that a valid arbitration agreement exists and grants the motion to dismiss this action and to compel arbitration as to the non-dissolution claims. The claims for judicial dissolution and the appointment of a liquidating trustee are stayed pending the completion of arbitration.[1]

---

[1] The plaintiff further moves to strike certain evidence cited by defendants in support of their motion as irrelevant, extraneous, and unduly prejudicial. I deny the motion to strike, but I note that the challenged information does not affect my ruling.

2

## I. BACKGROUND[2]

The plaintiff, Mark Gomes ("Gomes" or "Plaintiff"), is an investment analyst in the technology sector. In 2009, Gomes began providing stock picks on a crowd-sourced investment website. By 2013, Gomes had a following of thousands, and he and Ian Karnell ("Ian") decided to launch PoisedToTriple.com, a subscription service that circulates Gomes's stock picks. Thereafter, Gomes and Ian expanded their venture and founded PTT Capital, LLC ("PTT"), which would own PoisedToTriple.com and a new premium subscription service. Gomes and Ian each owned 50% of PTT, and profits were split 50/50. Subsequently, Jeremi Karnell, Ian's brother (collectively with Ian, the "Karnells"), became a member of PTT by acquiring half of Ian's stake. Gomes and the Karnells split PTT's ownership and profits 50-25-25, respectively. On October 3, 2013, the parties circulated, but did not execute, an operating agreement for PTT ("PTT LLC Agreement"). On October 6, 2013, PTT launched PTTResearch, the premium subscription service.

---

[2] The facts are drawn from the allegations of the plaintiff's complaint (the "Complaint"). *Zebroski v. Progessive Direct Ins. Co.*, 2015 WL 2156984, at *3 (Del. Ch. Apr. 30, 2014). The Court may look to documents outside the complaint in deciding a Rule 12(b)(1) motion. *See NAMA Hldgs., LLC, v. Related World Mkt. Ctr., LLC*, 922 A2d 417, 429 n.15 (Del. Ch. 2007). Specifically, the Court considers the Montext Operating Agreement, the PTT LLC Agreement, and the e-mail exchange regarding the agreement to arbitrate. *See* Compl. Ex. A; Transmittal Aff. of Michael F. Bonkowski ("Bonkowski Aff."); Aff. of Ian J. Karnell ("Karnell Aff.").

On June 8, 2015, Gomes and the Karnells executed an operating agreement for a new entity, Montext, LLC ("Montext," collectively with PTT and the Karnells, "Defendants"), which they planned to use to build a web-based platform to help investment analysts monetize their own stock picks. Each of Gomes and the Karnells owns one third of Montext; however, Gomes only receives 16.7% of the profits, and the Karnells split the remainder. The Montext operating agreement ("Montext Operating Agreement") contains a "Mediation and Arbitration" clause. Shortly after the formation of Montext, disputes arose regarding the ownership of the web-based platform.

In order to resolve the issues, counsel for Gomes and counsel for the Karnells discussed potential dispute resolution alternatives and verbally agreed to mediate and, if mediation was not successful, to arbitrate. Gomes's counsel wrote the Karnells' counsel an e-mail titled "Agreement to mediate and arbitrate" which stated:

> This will memorialize our agreement as to how to move this matter forward.
>
> The parties (Mark Gomes, Jeremi Karnell, and Ian Karnell) agree to mediate all disputes between the three of them related to PTT and Montext. The parties, through counsel, agrees [sic] to use their best efforts to select a mediator by September 11.
>
> The parties further agree that if an impasse is declared by the mediator, the parties will immediately initiate the

4

binding arbitration process in an effort to resolve these disputes. (emphasis added)[3]

Counsel for the Karnells then responded: "I am happy to call this an agreement on the core point of mediating/arbitrating in lieu of litigation. That said, let's move on nailing down some particulars, including items already discussed such as location, at the same time we continue to discuss interim and final settlement terms."[4] In a subsequent e-mail, counsel for the Karnells stated "we have already agreed to mediate and arbitrate. That agreement is enforceable"[5] (the above exchange, collectively, the "Arbitration Agreement").

Thereafter, the parties operated under the Arbitration Agreement. Specifically, counsel for Gomes suggested possible mediators. The parties then selected a mediator, set a date for mediation, agreed to the scope of the mediation, and engaged in limited discovery.[6] Gomes then cancelled the mediation days before the mediation was scheduled to begin.[7] The parties have not engaged in any further discussions since November 2015.

---

[3]    Bonkowski Aff. Ex. B.

[4]    *Id.* at Ex. C.

[5]    *Id.* at Ex. D.

[6]    *Id.* at Exs. E-I, K.

[7]    *Id.* at Ex. W.

5

On December 15, 2015, Gomes filed a complaint (the "Complaint") as a member of PTT that alleges breach of fiduciary duty against the Karnells, breach of the PTT LLC Agreement against the Karnells, waste against the Karnells, and aiding and abetting breach of fiduciary duty against Montext. Gomes also seeks judicial dissolution of PTT and appointment of a liquidating trustee for the purpose of selling PTT's assets.

On January 28, 2016, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and to compel arbitration under the Arbitration Agreement ("Motion to Dismiss").[8] On March 11, 2016, Plaintiff filed its answering brief in opposition to the Motion to Dismiss, challenging the validity of the Arbitration Agreement. Plaintiff argues that the "bare-boned agreement"[9] to arbitrate is missing "essential terms"[10] and, therefore, reflects preliminary negotiations, rather than a final and binding arbitration agreement.[11] Plaintiff further contends that because the

---

[8]   Defendants also seek dismissal under the Montext Operating Agreement's arbitration provision. As I discuss below, the Arbitration Agreement is a valid, binding agreement; therefore, I need not address whether the Montext Operating Agreement applies. Defendants also assert arguments regarding equitable estoppel and partial performance under the agreements; however, because the Arbitration Agreement is enforceable, I do not discuss those arguments.

[9]   Pl.'s Answering Br. 19.

[10]   *Id.* at 17.

[11]   *Id.* at 21.

PTT LLC Agreement does not contain an arbitration clause and does not otherwise incorporate an arbitration agreement, there is no requirement to arbitrate these disputes. Plaintiff also moved to strike portions of Defendants' Motion to Dismiss ("Motion to Strike"). On August 11, 2016, a hearing was held on these motions.

## II. ANALYSIS

The Court of Chancery will dismiss an action under Court of Chancery Rule 12(b)(1) "if it appears from the record that the Court does not have subject matter jurisdiction over the claim."[12] "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate."[13]

Once parties agree to arbitrate a dispute involving interstate commerce, the rules of the Federal Arbitration Act (the "Act") govern, unless there is a clear expression in the contract to the contrary.[14] The Act states that written arbitration

---

[12] *AFSCME Locals 1102 & 320 v. City of Wilm.*, 858 A.2d 962, 965 (Del. Ch. 2004) (internal citation omitted).

[13] *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012).

[14] Delaware law states that an agreement "specifically referencing the Delaware Uniform Arbitration Act . . . and the parties' desire to have it apply to their agreement confers jurisdiction on the Court to enforce the agreement under this chapter and to enter judgment on an award thereunder." 10 *Del. C.* § 5702(a). If the agreement makes no such statement, the Court of Chancery must apply the principles of the Act to the agreement. 10 *Del. C.* § 5702(c).

agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[15] The Supreme Court of the United States has interpreted this to mean that state law may be applied to an arbitration agreement "'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally'. . . . Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."[16]

Under Delaware law, "a valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[17] Contract formation requires an overt manifestation of mutual assent to the exchange and consideration.[18] In determining if an "overt manifestation of assent" occurred, the Court considers whether a reasonable person would "conclude that the parties intended to be bound" by examining the assent as well as all of the surrounding circumstances, including

---

[15] 9 U.S.C. § 2.

[16] *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (quoting *Perry v. Thomas*, 482 U.S. 483, 492. n.9 (1987)).

[17] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[18] *Ramone v. Lang*, 2006 WL 905347, at *10 (Del. Ch. Apr. 3, 2006).

the course and substance of negotiations, prior dealings, customary practices in the trade, and the formality and completeness of the document.[19]  An acceptance must include "three general components: (i) an expression of commitment; (ii) the commitment must not be conditional on any further act by either party; and (iii) the commitment must be one on the terms proposed by the offer without the slightest variation."[20]  A contract is formed "when all of the terms that the parties themselves regard as important have been negotiated."[21]

## A. The Parties Form an Agreement to Arbitrate that Includes All Essential Terms

Plaintiff argues that the parties did not negotiate all of the "essential terms" to the Arbitration Agreement, and thus, no contract was formed.  Specifically, Plaintiff asserts the following "essential terms" are missing from the Arbitration Agreement: "the identity of the arbitrator, the means of selecting an arbitrator, the location of the arbitration, the applicable rules/procedures, the effect of the arbitration, the governing law, the type of relief available, the scope of permissible discovery, and

---

[19]  *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986).

[20]  *Ramone*, 2006 WL 905347, at *11 (citing FARNSWORTH ON CONTRACTS § 3.13, at 272-74).

[21]  *Leeds*, 521 A.2d at 1101-02.

the payment of arbitration fees."[22]  To support his contention, Plaintiff cites to numerous federal cases discussing the purported "essential terms" of an arbitration agreement.[23]  Plaintiff concedes, however, that there is no consensus among courts about what constitute the "essential terms" of arbitration agreements.[24]

Plaintiff further points to two Delaware cases to support his contention that there is no "meeting of the minds" as to the "essential terms," and the e-mail communications were merely negotiations, not a final agreement.  Each case, however, is distinguishable.  In *Ramone v. Lang*, the parties disputed whether an e-mail exchange constituted a contract that created a limited liability company and governed its members' respective ownership rights and obligations relating to a real estate asset of the company.[25]  The Court held that the e-mail exchange did not form a contract because there was never a manifestation of objective assent to the essential contract terms.[26]  The text of the response reflected the plaintiff's lack of understanding of certain details, expressed potential disagreement with other details,

---

[22]     Pl.'s Answering Br. 20.

[23]     *Id.* at 19-20.

[24]     *Id.* at 19.

[25]     2006 WL 905347 (Del. Ch. Apr. 3, 2006).

[26]     *Id.* at *10-11.

and stated that he thought they were "close enough to warrant us getting this done."[27] Additionally, the response suggested the parties meet to "finalize the details," indicating that additional steps had to be taken to come to an agreement.[28]

In the case at hand, there is a manifestation of assent. Defendants' counsel responded to the initial offer of Plaintiff's counsel by stating he was "happy to call this an agreement on the core point of mediating/arbitrating in lieu of litigation."[29] Although particulars were to be "nailed down" after the fact, counsel for Gomes responded that "we were just doing an agreement to mediate and arbitrate, and we would pick a mediator," and counsel for the Karnells confirmed that they "have agreed to mediate and arbitrate. That agreement is enforceable."[30] Essentially, counsel for the Karnells expressed commitment that was unconditional and without variation—he accepted Gomes's counsel's proposal without altering any of its terms. Although further agreement was required on separate issues "such as location," the Karnells' counsel accepted the agreement on mediation and arbitration fully.

---

[27] *Id.*

[28] *Id.*

[29] Bonkowski Aff. Ex. C.

[30] *Id.* at Exs. C-E.

11

Similarly, in *Leeds v. First Allied Connecticut Corp.*, the Court held that although certain major terms of the sale of a nursing home business and its associated real estate were agreed to in a signed letter, no contract was formed.[31] Specifically, the Court found that "there are myriad topics and terms utterly conventional when a commercial seller in a significant transaction takes back a note" that were not present in the purported agreement.[32] The Court noted that as a matter of course in the sale of a multi-million dollar business, a one page contract without financial covenants, certain financial warranties, and terms governing defaults, while possible, "would be extraordinary," and "[a]bsent a clear indication that the other party intended that unusual course, a reasonable commercial negotiator . . . could not conclude in these circumstances that that was intended."[33] Furthermore, the subsequent conduct of the parties showed they did not intend the letter to be the completion of all negotiations. The parties met a month after the purported agreement for the purpose of additional negotiations where the parties "could agree on virtually nothing" and "never seemed to discuss" a vital financing requirement that "would probably have been a deal

---

[31]     521 A.2d 1095, 1102-03 (Del. Ch. 1986).

[32]     *Id.*

[33]     *Id.*

breaker even had agreement been reached on the other points."[34]  Thus, the Court

held that the original purported agreement was an agreement on certain terms, but it

was not intended to be the final contract.

Unlike in *Leeds*, the "essential terms" are present here.  The "effect of the

arbitration" is provided for in the agreement—it is binding.[35]  The agreement

establishes the scope of arbitration as "all disputes between the three [parties] related

to PTT and Montext."[36]  The agreement describes the timing of arbitration as when

"an impasse is declared by the mediator, the parties will immediately initiate the

binding arbitration process."[37]  The parties to the Arbitration Agreement are Mark

Gomes, Jeremi Karnell, and Ian Karnell.[38]

As for the identity and means of selecting an arbitrator, the Act states that if

no method for selecting an arbitrator is provided, then "upon the application of either

party to the controversy the court shall designate and appoint an arbitrator or

arbitrators or umpire, as the case may require, who shall act under the said agreement

---

[34]     *Id.* at 1101, 1103.

[35]     Bonkowski Aff. Ex. B.

[36]     *Id.*

[37]     *Id.*

[38]     *Id.*

with the same force and effect as if he or they had been specifically named therein."[39] Further, this Court has held that an arbitration agreement requiring parties to agree to an arbitrator, but not specifying the arbitrator, does not render the arbitration agreement unenforceable for lack of an essential term.[40] Rather, the agreement is subject to the Act, not Delaware law, and the Court has the ability to fill in and appoint an arbitrator.[41] Plaintiff fails to convince me that any further terms are "essential" to create a binding arbitration agreement.

Additionally, the parties in this case subsequently acted in accordance with the Arbitration Agreement for months: they selected a mediator, set a date for mediation, and engaged in discovery.[42] All three parties acted with the understanding that "an agreement on the core point of mediating/arbitrating in lieu of litigation" controlled their behavior and provided parameters for their interactions. There are no covenants or restrictions missing from the Arbitration Agreement that would seem "extraordinary" not to include, as in *Leeds*. A reasonable person could therefore conclude that the parties intended this to be their

---

[39]    9 U.S.C. § 5.

[40]    *Utilipath, LLC v. Hayes*, 2015 WL 1744163, at *7 (Del. Ch. Apr. 15, 2015).

[41]    *Id.*

[42]    Bonkowski Aff. Exs. E-I, K.

14

final agreement regarding the resolution of the disputes arising from PTT and Montext between Gomes and the Karnells. This agreement is not simply an intermediate agreement "along the way towards a completed negotiation," but rather a complete agreement on the subject of arbitration, with further arrangements to be negotiated thereafter.[43]

### B. The PTT LLC Agreement Does Not Prevent the Execution of a Subsequent Agreement on Arbitration

Plaintiff further argues that an operating agreement for PTT exists and controls in this matter.[44] The PTT LLC Agreement is a draft document. Plaintiff concedes that the document included in Exhibit A of the Complaint is an unsigned copy of the agreement.[45] Plaintiff further concedes that the parties never signed the agreement.[46] Plaintiff has pointed to nothing to suggest that the parties meant this document to be a final, enforceable agreement between them.

Even if the PTT LLC Agreement is operative, however, the only relevant provision outlines methods for dissolution of the company and identifies that one

---

[43] *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 521 A.2d 1095, 1101 (Del. Ch. 1986).

[44] Pl.'s Answering Br. 14.

[45] *Id.* at 7.

[46] Oral Arg. Tr. 29.

such method is "[e]ntry of a decree of judicial dissolution under Delaware Limited Liability Company Act."[47] The PTT LLC Agreement also states that it "will be construed and enforced in accordance with the laws of the state of Delaware."[48] There is no mention of arbitration in the PTT LLC Agreement, and the PTT LLC Agreement does not foreclose the Arbitration Agreement the parties executed.[49] With respect to dissolution, however, Defendants agree with Plaintiff that this Court should make the ultimate determination.[50]

## III.   CONCLUSION

The Court therefore GRANTS Defendants' Motion to Dismiss in part and DENIES the motion in part as follows: the motion is granted for the claims of breach of fiduciary duty against the Karnells, breach of the PTT LLC Agreement against

---

[47]   Compl. Ex. A, at 9.

[48]   *Id.* at 10.

[49]   Plaintiff argues that the Arbitration Agreement must be incorporated by reference into the PTT LLC Agreement in order to be binding (or vice versa). As Plaintiff readily admits, however, the "PTT [LLC] Agreement was in existence long before the agreement to arbitrate was allegedly executed. This sequence of contract formation renders the doctrine of incorporation by reference inapplicable." Pl.'s Answering Br. 23. Further, Plaintiff does not point to authority explaining why two contracts that relate to different subject matters (the operation of a limited liability company and the resolution of disputes between three parties relating to certain subject matters) must be incorporated by reference in order to be valid.

[50]   Defs.' Reply Mem. 6 n.1.

the Karnells, waste against the Karnells, and aiding and abetting a breach of fiduciary duty against Montext. The motion is denied for the request for judicial dissolution of PTT and appointment of a liquidating trustee for the purpose of selling PTT's assets. The Court STAYS the two dissolution claims pending the results of the compelled arbitration resolving all other claims and recommending the terms of dissolution. The Motion to Strike is DENIED.

**IT IS SO ORDERED.**