**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: March 31, 2023
Date Submitted: December 15, 2022

Jeffrey M. Weiner
1332 King Street
Wilmington, DE 19801

Charles J. Brown, III
Gellert, Scali, Busenkell, & Brown, LLC
Bradley P. Lehman
1201 N. Orange Street, Suite 300
Wilmington, DE 19801

Re:   *Appleby Apartments, LP v. Appleby Apartments Associates, LP*,
        C.A. No. 2022-0325-SEM

Dear Counsel:

In this breach-of-contract action, the defendant seeks a pleading stage dismissal for failure to state a claim and lack of jurisdiction. The defendant argues that (1) the plaintiff failed to plead a reasonably conceivable claim for specific performance, (2) there is an adequate remedy at law for the underlying breach-of-contract claim, and (3) either way, the purported agreement contains a forum-selection clause favoring New Jersey. Because I agree with arguments (1) and (2) and recommend dismissal with leave to transfer, I defer on argument (3).

This is my final report.

## I.  BACKGROUND[1]

This is a contract dispute regarding the sale of real property.  Since December 31, 1992, Appleby Associates, LP (the "Defendant") has owned property at 401 Bedford Lane, in New Castle, Delaware (the "Property").[2]  Appleby Apartments LP (the "Plaintiff") agreed to purchase the Property, but the sale never closed.

The parties' failed agreement was heavily negotiated.  On November 9, 2021, the parties executed a non-binding letter of intent for the purchase of the Property.[3]  Three days later, on November 12, 2021, the Defendant's counsel distributed a first draft of an agreement of sale for the Property to the Plaintiff (the "First Draft").[4]  The First Draft contemplated closing with ninety (90) days of signing, a time which would be "of the essence."  Under the First Draft, however, the buyer (the Plaintiff) could seek to extend closing by thirty (30) days; if an extension was requested, the First Draft contemplated the initial deposit being released to the seller (the Defendant) and a new deposit being posted.  The First Draft also addressed how the Plaintiff could, if it chose to, assume the seller's mortgage and the parties'

---

[1] All facts are drawn from the plaintiff's amended complaint, Docket Item ("D.I.") 15, and the documents integral to it. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

[2] D.I. 15, ¶ 3.

[3] *Id.* at ¶ 4.

[4] *Id.*

obligations in connection with any requested assumption, which would be subject to the lender's ultimate approval.

As part of their negotiations, on November 22, 2021, the Defendant provided the Plaintiff a copy of the underlying mortgage note.[5] The Defendant did not, however, directly inform the Plaintiff that its mortgage agreement had a lock-out clause.[6] More information about the lock-out clause, and the lender's invocation of it, was provided after the final agreement was signed.

But, before that, on December 8, 2021, counsel for the Defendant circulated another draft of the agreement (the "Second Draft").[7] The Second Draft continued to reflect the closing date as "of the essence" but the extension language changed; rather than a no-ask thirty (30) days, the Second Draft only permitted an extension of closing if necessary for the Plaintiff's assumption of the Defendant's mortgage.[8] With this limitation, the additional deposit was lowered from $1 million to $250,000.00.[9] In the Second Draft, the assumption procedures were also

---

[5] *Id.* ¶ 6.

[6] *Id.* at ¶ 5.

[7] *Id.* at ¶ 11.

[8] *Id.*

[9] *Id.*

tightened—the Plaintiff would need to seek assumption within seven (7) days of signing.[10]

On December 10, 2021, the parties executed the final agreement of sale for the Property (the "Agreement").[11] Regarding closing, the Agreement tracks the Second Draft and provides, in pertinent part, closing "shall be held on or before ninety (90) days following [the] Effective Date . . . with time being of the essence. Notwithstanding the foregoing, [the Plaintiff] shall have the one time right to extend the Closing by up to thirty (30) days provided that the extension is required for approval and completion of the assignment of and assumption by the" Plaintiff of the Defendant's loan and the Plaintiff posts a second $250,000.00 deposit.[12] The assignment and assumption provisions in the Agreement further provided:

> Upon the execution of this Agreement, [the Plaintiff] may seek approval from [the Defendant's lender] permitting the assignment to and assumption by [the Plaintiff of the Defendant's] mortgage loan . . . . In the event that [the Plaintiff] seeks approval for the assignment and assumption . . ., [the Plaintiff] shall make application with [the Defendant's lender] within seven (7) days of the Execution Date and shall diligently proceed with the application and provide all documents and information reasonably requested by [the Defendant's lender] to effectuate the assignment and assumption of the Mortgage Loan.[13]

---

[10] *Id.*

[11] D.I. 15, Ex A.

[12] *Id.* at ¶ 3.

[13] *Id.* at ¶ 4.

The Agreement also contained a forum-selection clause which provided that the Agreement would be governed by the laws of the State of New Jersey and litigation of the Agreement must be brought in the Superior Court of New Jersey in Camden County.[14]

The 90-day closing date would have been on or around March 10, 2022. But on February 11, 2022, the Defendant notified the Plaintiff that the Defendant's loan was locked out by the lender, and would have remained that way until August 20, 2022.[15]  In response, on February 16, 2022, the Plaintiff advised the Defendant that the Plaintiff did not want to proceed with assumption of the Defendant's loan and would prefer to obtain a new loan and pay the defeasance fee for the Defendant's payoff.[16]  The Plaintiff implied that a new closing date would be necessary to do so and requested that the Defendant confirm its acceptance.[17]  The Defendant did not do so.  Rather, on March 18, 2022, after the anticipated closing date, the Defendant sent the Plaintiff a letter purporting to terminate the Agreement.[18]

---

[14] *Id.* at ¶ 17.7.

[15] D.I. 15, ¶ 14.

[16] *Id.* at ¶ 15.

[17] *Id.*

[18] *Id.* at ¶ 16.

The Plaintiff responded by filing a complaint with this Court on April 13, 2022 seeking specific performance of the Agreement.[19]  On May 26, 2022, the Defendant moved to dismiss for failure to state a claim.[20]  Rather than rest on its initial pleading, the Plaintiff responded to the motion by filing an amended complaint on July 7, 2022 (the "Amended Complaint"). [21]  Through the Amended Complaint, the Plaintiff continues to seek specific performance of the Agreement or, alternatively, damages for breach.[22]

The Defendant moved to dismiss the Amended Complaint on July 18, 2022 (the "Motion").[23]  The Motion was fully briefed on October 17, 2022, and on December 15, 2022, I heard oral argument and took the Motion under advisement.[24]

## II.   ANALYSIS

Through the Motion, the Defendant seeks dismissal for failure to state a claim under Court of Chancery Rule 12(b)(6) and lack of jurisdiction under Rule 12(b)(1). The standard of review under these sections is settled.

---

[19] D.I. 1.

[20] D.I. 9.

[21] D.I. 15.

[22] *Id.*

[23] D.I. 16.

[24] D.I. 20, 22, 23, 26.

> Under Rule 12(b)(6):
>
> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[25]

Under Rule 12(b)(1), a claim will be dismissed "if it appears from the record that the Court does not have jurisdiction over the claim."[26]

The Defendant argues that even taking the Plaintiff's well-pled allegations as true, the Plaintiff has failed to state a claim for specific performance of the Agreement, the Defendant's only equitable claim. The Defendant argues that if this equitable claim is dismissed, this Court lacks jurisdiction over, and should dismiss, the remaining claim for breach of contract. Alternatively, the Defendant argues that the forum-selection clause in the Agreement requires dismissal in favor of New Jersey. I address these claims in turn.

---

[25] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

[26] *AFSCME Locals 1102 & 320 v. City of Wilm.*, 858 A.2d 962, 965 (Del. Ch. 2004).

### A. The Plaintiff did not adequately plead a claim for specific performance of the Agreement.

To ultimately prevail on the specific-performance claim the Plaintiff would need to prove, by clear and convincing evidence, "that (1) an enforceable contractual obligation exists; (2) [the Plaintiff] has performed (or is ready, willing, and able to perform) its own obligations; and (3) that the balance of the equities tips in its favor."[27]  Specific performance is not, however, available "to a party who is in default of a material obligation under the contract, unless that party is excused from performance of that obligation."[28]  Here, at the pleading stage, the question is "whether it is reasonably conceivable that [the Plaintiff] can establish a right to specific performance of the Agreement by clear and convincing evidence."[29]

The Defendant argues that the Plaintiff cannot meet this standard because the Plaintiff failed to close in the time permitted under the Agreement, which was "of the essence."  The Plaintiff argues that closing was prevented by the Defendant, and it was, otherwise, ready, willing, and able to proceed.  I find the Plaintiff failed to plead a reasonably conceivable claim of prevention; absent such, it is not reasonably

---

[27] *Hastings Funeral Home, Inc. v. Hastings*, 2021 WL 8741648, at *3 (Del. Ch. Nov. 29, 2021).

[28] *Walton v. Beale*, 2006 WL 265489, at *3 (Del. Ch. Jan. 30, 2006).

[29] *Id.*

conceivable that the Plaintiff could ultimately prove that it was ready, willing, and able to close by the required clear and convincing evidence.

"[W]here the time of performance is expressly made of the essence of a contract, a plaintiff must have performed [its] part of the contract within the specified time . . . to be entitled to specific performance."[30] But this bar does not apply "when there has been a repudiation by the defendant of the contract, or when the defendant has prevented the plaintiff from performing [its] obligations."[31]

Repudiation or prevention at the pleading-stage was addressed in *Morgan v. Wells*.[32] There, Chancellor Wolcott denied a motion to dismiss a specific performance claim, despite "precise and specific detail [of] a repudiation by the defendants, or detailed circumstances showing the prevention by the defendants of performance by the plaintiff of his obligations."[33] Rather than hold the pleader to such an exacting standard, the Chancellor read the complaint "most favorably to the pleader," and found "a repudiation by the defendants [was] alleged."[34] In doing so, the Chancellor relied on allegations that "[a]lmost immediately, the plaintiff began

---

[30] *Morgan v. Wells*, 80 A.2d 504, 506–07 (Del. Ch. 1951) (citations omitted).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 506.

[34] *Id.*

to prepare to carry out his obligations under the contract[,]" and the plaintiff appeared at the closing date, "with the necessary amount of cash to complete the purchase price."[35]  Conversely, the defendants did not cooperate with the plaintiff's preclosing requests, nor appear at closing.[36]  This was enough to survive dismissal, although the Chancellor noted "[w]hether or not the repudiation on final hearing can be supported by sufficient proof remain[ed] to be seen."[37]

Although a post-trial decision, I also find this Court's decision in *Walton v. Beale*[38] persuasive.  There, Vice Chancellor Parsons granted specific performance despite a missed closing date.  The Vice Chancellor found the defendant caused the plaintiff not to meet the closing date because the defendants "attempted to change the terms of the transaction by demanding payment of a portion of the money for the land in cash and becoming angry at [the plaintiff] when he resisted the change."[39]  Additionally, "[t]he evidence also indicate[d] that both sides anticipated developing a subdivision plan before the closing, and the [defendants] did not make that plan

---

[35] *Id.*

[36] *Id.* at 505-06.

[37] *Id.* at 506.

[38] 2006 WL 265489 (Del. Ch. Jan. 30, 2006).

[39] *Id.* at *6 (citation omitted).

available until [after the closing date]. Moreover, the record show[ed] that at all relevant times [the plaintiff] was ready to close the deal."[40]

Here, there is no dispute that time was of the essence regarding closing and that closing did not occur when contemplated. Thus, the question is whether the Plaintiff has pled facts making it reasonably conceivable that it can ultimately prove—by clear and convincing evidence—that it was ready, willing, and able to close but for the Defendant's repudiation or prevention. Again, I find the Plaintiff cannot meet this elevated bar.

The Amended Complaint is heavy with quotations from the parties' agreement, but light on facts explaining what the Plaintiff did to prepare for closing and why closing failed to occur. The Plaintiff pleads that before signing the Agreement, the Defendant did not disclose the Defendant's loan was in lock-out, which would prevent closing.[41] But the Agreement contemplated that assumption of that loan was contingent upon the Plaintiff (1) applying to the mortgage company within seven (7) days of signing, (2) "diligent[ly] proceeding with the application", and (3) "provid[ing] all documents and information reasonably requested."[42] The

---

[40] *Id.*

[41] D.I. 15, ¶ 12.

[42] D.I. 15, Ex A, ¶ 4.

Agreement also contemplated the mortgage company declining any such request and specified how the transaction would proceed "[i]n the event that" the lender approved or did not approve assumption.[43] The Agreement also contemplated the Plaintiff not seeking assumption: "In the event that . . . [the Plaintiff] elects not to proceed with the assignment and assumption . . . then [the Plaintiff] shall proceed with the purchase of the Property[.]"[44] And in the event the Plaintiff defaulted, the Defendant had the right to terminate the Agreement.[45]

That is precisely what occurred. Although the Plaintiff attempts to shift blame for the failure to close to the Defendant, the Plaintiff's own averments tell a different story. The Plaintiff pleads—and admits—that the Plaintiff "did not intend to exercise its option to assume" the loan.[46] The Plaintiff confirmed as much in its February 16, 2022 communication to the Defendant.[47] Such was the Plaintiff's prerogative; the Agreement gave the Plaintiff a choice to assume or independently finance. But that choice had a strict clock. Closing under the Agreement was "of the essence" and could only be extended once, for thirty (30) days, if necessary to a

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at ¶ 10.1

[46] D.I. 15, ¶ 15.

[47] *Id.*

timely request for assumption of the loan. Yet, the Plaintiff, implicitly, asked for more time to secure a new loan and, despite agreement, failed to close.[48]

These allegations fall far short of *Morgan* and *Walton*. The Defendant did not repudiate or inject new complications into the parties' deal, preventing closing. Nor did the Plaintiff plead that it acted diligently to prepare for closing and had sufficient funds to close. Rather, the Amended Complaint supports that the Plaintiff failed to secure a new loan in time for closing, sought (but did not get agreement on) an extension, and failed to close.[49]

---

[48] *Id.*

[49] In the Plaintiff's answering brief in opposition to the Motion, the Plaintiff attempts to inject new facts to support that it was ready, willing, and able to close. D.I. 22, p.35, n.1. The Plaintiff provides:

> At trial, in support that [the Plaintiff] was ready, willing and able to close but for [the Defendant's] inability to deliver clear title, [the Plaintiff] will introduce evidence that: (1) its parent/affiliates on 10/06/21 for $32.1 million acquired Iron Hill at 2 Burleigh Court, Newark, on 11/17/21 for $19 million acquired Southgate at 24 Marvin Drive, Newark, and on 7/01/22 for $27 million acquired Hidden Creek at 70 Hobart Drive in Newark. In fact, between 8/17/21 and 9/16/22 acquired 18 properties for more than one half billion dollars with more than $100 million in equity; (2) it had obtained a Property Condition Report dated 2/18/22 and a Phase I Environmental Site Assessment Report from EBI Consulting; and (3) Indicative Summary of Terms and Conditions for up to $31 million from Capital Funding, LLC.

I do not consider any of these new facts in this report because the Plaintiff was required to plead its claim in the Amended Complaint; it cannot amend and supplement by brief. *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *25 (Del. Ch. Dec. 19, 2017) ("[I]t is impermissible to attempt to amend one's pleading through a brief.").

The Plaintiff argues that the Defendant prevented closing because the Defendant's loan was locked out until after the anticipated closing date. But this improperly places blame on the Defendant for the lender's restrictions and ignores the reality that the Agreement could have closed, despite the lock-out, if the Plaintiff assumed the loan, an option in the Agreement. The parties heavily negotiated the potential loan assumption and assignment, subject to the lender's approval. It is unreasonable, even at the pleading stage, to infer from a lender lock-out that the Defendant took steps to prevent closing. The Plaintiff has also failed to plead any facts supporting that it was, otherwise, ready, willing, and able to perform. I find it is not reasonably conceivable that the Plaintiff can ultimately prove—by clear and convincing evidence—that it was ready, willing, and able to close but for the Defendant's conduct.

### B. Once the equitable claim is dismissed, this Court lacks jurisdiction over the breach-of-contract claim.

This Court is a court of "limited jurisdiction."[50] "[T]he Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction

---

[50] *Clark v. Teeven Holding Co., Inc.*, 625 A.2d 869, 880 (Del. Ch. 1992).

is conferred by statute."[51]  Under Court of Chancery Rule 12(h)(3) "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."

Chancellor McCormick invoked this rule recently in *ActiGraph Holdings, LLC v. Cyntech, Inc.*[52]  There, the only equitable claim or request for relief was a claim for breach of fiduciary duty.  After dismissing that claim for lack of personal jurisdiction, Chancellor McCormick turned to the remaining claims for breach of contract and fraud.  Because neither claim arose in equity, nor contained a request for equitable relief, Chancellor McCormick dismissed the action with leave to transfer under 10 *Del. C.* § 1902.[53]

The same principles apply here.  The Plaintiff's equitable hook was its specific performance request.  But that request should be dismissed, as explained herein, leaving only the breach-of-contract claim seeking money damages.  Because that legal claim has an adequate remedy at law and is outside the scope of this Court's limited jurisdiction, I recommend it be dismissed.  Under 10 *Del. C.* § 1902, the

---

[51] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citations omitted).

[52] 2023 WL 1989141 (Del. Ch. Feb. 14, 2023).

[53] *Id.* at *3.

Plaintiff should have sixty (60) days from a final dismissal decision to seek transfer of its remaining claim to a court with jurisdiction.

### C. This Court should not address the forum-selection-clause argument.

The Defendant argues, alternatively, that the forum-selection clause in the Agreement bars any proceeding before a Delaware court. The Plaintiff disagrees and seeks relief from the clause arguing that only Delaware has *in rem* jurisdiction over Delaware real property. Although the dispute is compelling, I decline to address it.

"Subject matter jurisdiction is in essence a question of the power of a court to hear and decide the case before it."[54] Herein, I find the only equitable request should be dismissed and this Court lacks subject matter jurisdiction over the remaining claim. As such, it would be improper and advisory for me to address this alternative argument and whether the remaining claim, which is outside this Court's jurisdiction, is viable.

## III. CONCLUSION

For the above reasons, I find the Motion should be granted. The Plaintiff failed to plead a reasonably conceivable specific-performance claim. Without that

---

[54] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022).

equitable hook, this Court lacks jurisdiction over the Plaintiff's remaining claim for breach of contract. Thus, this action should be dismissed, with leave to transfer. If transferred, the accepting court can address the forum-selection-clause argument, if and as necessary.

This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery